**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **John McArdle** )<br>**1532 Dogwood Road** )<br>**Saint Leonard, MD 20685** )<br>)<br>**Plaintiff,** )<br>)<br>v. ) Civil Action No. 1:19-cv-03637<br>)<br>**METROPOLITAN POLICE DEPARTMENT** )<br>**300 Indiana Avenue, NW** )<br>**Washington, DC 20001,** )<br>)<br>**Defendant.** )<br>) **JURY TRIAL DEMANDED** | |

**COMPLAINT**
**(National Origin Discrimination; Age Discrimination)**

Pursuant to Federal Rule of Civil Procedure Rule 3, Plaintiff John McArdle (hereafter "Plaintiff"), by her undersigned attorney, hereby files his Complaint.

**I. JURISDICTION AND VENUE**

1. This Court has jurisdiction of the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e-5(f).

2. In or about July 11, 2016, Plaintiff filed a formal Charge of Discrimination in EEOC No. 570-2016-01778 with the EEOC and the DC Office of Human Rights.

3. The EEOC accepted Plaintiff's formal Charge of Discrimination as timely.

4. Defendant was duly notified about Plaintiff's administrative complaints and was given an opportunity to respond to his allegations.

5. On September 6, 2019, the EEOC made a decision on the merits of Plaintiff's

discrimination claims and issued him a Notice of Right to Sue, by regular mail.

6. This Complaint is filed within 90 days after Plaintiff received the Notice of Right to Sue on his EEOC complaint.

7. Plaintiff has exhausted the administrative remedies available to him under 42 U.S.C. §§ 2000e, *et seq.*, and all conditions precedent have occurred or been performed.

8. Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c), as Defendant Metropolitan Police Department (hereinafter "Defendant") has extensive and deliberate contacts in this District and Division, including a business location at 300 Indiana Avenue, NW, Washington, DC 20001, at which Plaintiff performed work during his tenure with Defendant.

## II. THE PARTIES

9. Plaintiff is a resident of the State of Maryland and a current employee of Defendant, working in the District of Columbia.

10. Defendant is a political subdivision of the District of Columbia created pursuant to DC law, which employees more than 500 employees.

## III. FACTS CENTRAL TO PLAINTIFF'S CLAIMS

11. Plaintiff is a Canadian national.

12. Plaintiff is over the age of 40.

13. In or around March 12, 1990, Plaintiff was first hired by Defendant as a Police Officer.

14. In 1993, Defendant began using Plaintiff to conduct motorcycle trainings for officers, and to serve as expert witness for motorcycle-related traffic incidents.

15. Plaintiff represented Defendant in motorcycle competitions, was sent all around the country by Defendant to teach various police motorcycle trainings, and was recognized as one of the top officers for teaching police motorcycle training in North America.

16. In 2007, Plaintiff moved to Canada for personal family reasons.

17. At the time Plaintiff left the Defendant in 2007, his salary was $65,470/year.

18. Over the next six years (2007-2013), Plaintiff worked for a Canadian police department and continued to teach police motorcycle training.

19. When Plaintiff moved back to the United States in the summer of 2013, he reapplied for a position with Defendant as an Officer.

20. Around the same time, Plaintiff was informed that he would be hired at his former position.

21. Plaintiff's belief was confirmed by Investigators Ignacio Alleyne and James Hatten.

22. When presented an employment offer with the Defendant on July 28, 2014, Plaintiff reviewed the employment contract and discovered that his pay rate was that of a new recruit - $50,644/year.

23. When Plaintiff questioned the pay discrepancy, HR Representative Antonio Payne

told Plaintiff not to worry about the pay level in the contract since he would be receiving his previous pay rate and benefits.

24. Mr. Payne made these statements in the presence of new recruits – Caitlynn Childs, Gus Karanikolis, Robert King, Mathew Erd, Sheneana Nuumata, and Ken Ethridge.

25. Plaintiff reluctantly signed his employment contract on July 28, 2014.

26. In or around August 2014, Plaintiff was informed by Matt Miranda, the Human Resources Manager, that the Department made a mistake, and that Plaintiff would instead start as a new recruit.

27. Furthermore, Mr. Miranda stated to Plaintiff that Plaintiff would probably not make it through police training academy and would only get injured because he is "old".

28. Despite Plaintiff's 18 years of experience at the time he was hired, Plaintiff was forced to go through the same training as new police officers.

29. Plaintiff was not given his former job of Police Officer back.

30. When Plaintiff asked why he was not given his former job, Plaintiff was told "You're Canadian. You don't understand."

31. However, Plaintiff has observed that several other officers have left the Defendant's employment, returned, and have been reinstated to their former positions.

32. The officers Plaintiff has observed be reinstated to their former positions are Joseph Stimmell, Marcus Boddie, Annette Maddison, Tim Steffis, Mathew Klein, and Alfred

Durham.

33. When Plaintiff asked why he did not receive the same opportunity to return to his former position, he was told that "things have changed."

34. Plaintiff was further told that he was "old", "Canadian", and "you don't understand things."

35. Plaintiff has applied on three separate occasions for his former position of teaching motorcycle trainings as a Police Officer.

36. On each occasion, the officer hired for teaching motorcycle trainings was much younger and lacked the level of expertise possessed by Plaintiff.

37. On a daily basis, Plaintiff is subjected to harassment, being called "old man" by the Commanders and by other police officers.

38. Negative comments are also made about Plaintiff's origin, such as references to his accent and statements such as "he speaks French", on a daily basis.

39. Specifically, on November 7, 2017, while Plaintiff was assigned to Motor 504 (a police Harley), Plaintiff overheard an individual from the Robbery Squad state over the radio that "Detective Adams is looking for someone", "looking for an older officer, someone that operates a motorcycle, who is Canadian and speaks with an accent, goes by the name of JC or JP".

40. Plaintiff was humiliated, embarrassed, and physically sickened by the remarks,

which were made over main police radio channel between 12:45 and 1:15pm that day.

41. Plaintiff informed the detective on or around November 7, 2017 that he had been offended by the comments and Plaintiff felt they were very inappropriate.

42. Plaintiff has observed other police officers be dismissed from Defendant's employment because of their national origin.

43. Plaintiff believes that the Defendant refused to hire him at his level of experience and further refused to promote him due to his age and national origin.

44. As a result of the Defendant's actions, Plaintiff has suffered loss of income, emotional distress, and pecuniary damages.

## IV. **STATEMENT OF CLAIMS**

### **Count I: National Origin Discrimination (Title VII)**

45. Plaintiff adopts and incorporates by reference ¶¶ 1-45 above.

46. As stated above, Plaintiff is a Canadian national.

47. Defendant unlawfully discriminated against Plaintiff on the basis of his national origin in violation of Title VII.

48. Specifically, Defendant discriminated against Plaintiff by making offensive remarks about his nationality and making it difficult for him to advance within the police department.

49. As a result of Defendant's violations of Title VII, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

**Count II: Age Discrimination (Age Discrimination in Employment Act of 1967)**

50. Plaintiff adopts and incorporates by reference ¶¶ 1-50 above.

51. Plaintiff is in a protected class because he was over the age of 40 when he experienced the events alleged.

52. Plaintiff suffered adverse action because he was effectively demoted to the level of a new recruit.

53. Plaintiff was performing his job well enough to meet Defendant's expectations.

54. Individuals under the age of 40 were treated more favorably because they were reinstated to previous positions.

## IV. REMEDIES SOUGHT

55. WHEREFORE, Plaintiff respectfully requests that the Court issue a judgment granting him the following relief from Defendant:

   a. A declaratory judgment that defendant discriminated against Plaintiff, as alleged herein in Counts I and II;

   b. Back pay, including without limitation other lost benefits due to Defendant's discrimination against Plaintiff;

   c. Compensatory and punitive damages, pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a(a)(2), 1981a(b)(3)(A), for taking these actions with malice and bad faith;

   d. Prejudgment and post judgment interest on all damages, on the lost compensation and compensatory damages;

   e. Reasonable attorneys' fees and costs under 42 U.S.C. §§ 1981a, 2000e-5(k); and

   f. Such other and further relief as to the Court seems just and warranted.

## VI. JURY TRIAL DEMAND

56. Plaintiff requests a jury trial on all issues of fact and damages arising herein.

                                      Respectfully submitted,

                                      *Matthew Hunter*

                                      _____
                                      MATTHEW HUNTER (DC Bar No 1510741)
                                      Simply Law, LLC
                                      3 Bethesda Metro Center, Suite 700
                                      Bethesda, MD 20814
                                      T: (202) 630-5123
                                      matthew@simplylawllc.com
                                      <u>Attorney for Plaintiff</u>